**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                             **MEMORANDUM & ORDER**

           - against -

                                             06-CR-91 (SLT)

JAVIER ANTONIO CALLE SERNA, *et al.*,

                      Defendants.
-----------------------------------------------------------X

**TOWNES, United States District Judge,**

       Third-party petitioner Ross R. Hartog, the trustee for the Chapter 7 bankruptcy estate of Banah International Group, Inc., filed a petition pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2 to adjudicate his interest in approximately $2.7 million that is subject to a preliminary forfeiture order of this Court. The United States of America has moved to dismiss the petition. For the reasons that follow, the government's motion is granted.

**I.**     **Background**

     **A.**     **Factual History**

         **1.**     **Underlying Criminal Case**

       Javier Antonio Calle Serna and several codefendants were charged with various crimes for their involvement in Los Rastrojos, "a paramilitary organization that employed hundreds of individuals and controlled the drug trade along the Pacific coast of Colombia." Superseding Indictment, unsealed Apr. 10, 2014, Dkt. No. 392 ("Superseding Indictment") ¶ 1. A grand jury indicted Calle Serna, the "principal leader" of Los Rastrojos, on charges of, among other things, continuing criminal enterprise for acts occurring between January 2004 and February 2011, international cocaine distribution conspiracy for acts occurring between January 2004 and

December 2012, and conspiracy to launder money for acts occurring between January 2004 and December 2012. *Id.* ¶¶ 1, 5, 14, 26.

### 2. Bankruptcy Proceedings and Seizure of Funds

On February 21, 2013, Banah International Group., Inc., an international sugar wholesaler based in Miami, Florida, filed a voluntary petition for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Southern District of Florida. Verified Petition of Third Party Ross R. Hartog dated Feb. 2, 2016, Dkt. No. 522 ("Pet.") ¶¶ 4, 6.[1] At this time, Banah owed creditors more than $5 million, and the company was experiencing cash flow shortages and net operating losses. Pet. ¶¶ 5, 7. During the pendency of the Chapter 11 proceedings, Banah revamped aspects of its business and continued to operate. *Id.* ¶¶ 10–13.

On March 10, 2014, Banah filed a plan of reorganization in the Florida bankruptcy court. *Id.* ¶ 14. The plan provided that Cana De Azucar & Cereales, S.A., Inc.—a company that had recently provided Banah with financing after negotiating to serve as its exclusive sugar supplier—would purchase Banah for approximately $9 million. *Id.* ¶¶ 9, 14, 16. The deal would have allowed Banah's creditors to recoup an estimated $2.8 to $3.5 million. *Id.* ¶ 20. According to the third-party petition, the creditors "overwhelmingly" supported the plan of reorganization. *Id.* ¶ 19.

On May 15, 2014, the bankruptcy court approved plan. *Id.* ¶ 18. Pursuant to the plan's terms, the sale was to close by June 30, 2014. *Id.* ¶ 21. On July 9, 2014, however, Banah filed a motion to extend the closing date to July 30, 2014. Bankr. Dkt. No. 598 ¶ 10.[2] According to its

---

[1] The facts contained in the third-party petition are assumed to be true for purposes of this decision. *See, e.g., Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004).

[2] All citations to "Bankr. Dkt. No." refer to filings appearing on the docket of *In re: Banah International Group, Inc.*, Case No. 13-BK-13954 (AJC) (Bankr. S.D. Fla.). The Court takes

2

motion, Banah expected approximately $3.5 million in cash as part of the sale, but it had received only about $2.7 million to date, leaving a cash shortfall of approximately $800,000. Bankr. Dkt. No. 598 ¶ 8.[3] Banah represented that the sale could not close and the plan could not become effective without the missing funds. Bankr. Dkt. No. 598 ¶ 8.

The bankruptcy court granted Banah's request to extend the closing date to July 30, 2014, and scheduled a status conference for August 7, 2014. Bankr. Dkt. No. 600. On July 31, 2014, however, Banah again moved to extend the closing date—this time to August 30, 2014, because it still had not received the necessary cash. Bankr. Dkt. No. 607 ¶¶ 9–10. It appears that the bankruptcy court did not act on this extension request before the August 7, 2014 conference.

On August 5, 2014, based on an affidavit sworn to by an agent of the U.S. Drug Enforcement Administration, Magistrate Judge Ramon E. Reyes of this District signed a warrant to seize the approximately $2.7 million in cash that Banah had already received. Pet. Ex. 3 (Seizure Warrant dated Aug. 5, 2014); Pet. ¶¶ 26–27. According to the third-party petition, the government had asserted that these funds "derived from criminal activity." Pet. ¶ 28. The warrant itself indicates that there was probable cause to believe that the funds were linked to drug and money-laundering activities. Pet. Ex. 3 (Seizure Warrant dated Aug. 5, 2014) (citing 21 U.S.C. § 881(a)(6); 18 U.S.C. §§ 981(a)(1)(A), 982(a)(1)).

---

judicial notice of these records. *See Scerba v. Allied Pilots Ass'n*, No. 13-CV-3694 (LAK) (AJP), 2013 WL 6481583, at *2 n.2 (S.D.N.Y. Dec. 10, 2013), *aff'd*, 589 F. App'x 554 (2d Cir. 2014).

[3] The $2.7 million in cash did not come directly from Cana (the purchaser), but rather from a dozen other entities or individuals—all of whom made one or more payments between November 2013 and June 2014, in amounts ranging from a few thousand dollars to more than a half million. Pet. Ex. 2 (Sean Marcil Aff. dated Aug. 20, 2014, Ex. B). On the present record, the relationship between these parties and Cana is unclear.

3

Following the August 7 conference, the bankruptcy court ordered Banah to show cause why, given the seizure of the $2.7 million by federal authorities, the order confirming the plan of reorganization should not be vacated and the case converted from Chapter 11 to Chapter 7. Bankr. Dkt. No. 620; Pet. ¶ 30.[4] On September 11, 2014, the bankruptcy court vacated its previous order approving the plan of reorganization. Bankr. Dkt. No. 642. On October 3, 2014, the bankruptcy court converted the case from Chapter 11 to Chapter 7. Bankr. Dkt. No. 688. Banah's operations soon ceased and the company was liquidated. Pet. ¶ 39. The liquidation generated a total of approximately $700,000—leaving significantly less for Banah's creditors than the $2.8 to $3.5 million that they had expected to recoup after the sale of the company. *Id.* ¶¶ 20, 40.

### 3. Preliminary Order of Forfeiture

On February 26, 2015, defendant Javier Antonio Calle Serna pleaded guilty to charges of, among other things, continuing criminal enterprise, international cocaine distribution conspiracy, and conspiracy to launder money. Dkt. No. 467. On June 18, 2015, this Court signed a preliminary order of forfeiture for $1 billion against him, which included the nearly $2.7 million that was seized pursuant to the warrant issued by Judge Reyes. Dkt. No. 487 ¶ 2.[5] In accordance with 21 U.S.C. § 853(n)(1), the government publicly posted notice of this order from December

---

[4] *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993) (explaining that "Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors" while the "aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate").

[5] On August 31, 2015, the Court issued a preliminary order of forfeiture against Javier Antonio Calle Serna's codefendant (and brother) Luis Enrique Calle Serna, which also included the seized $2.7 million (Dkt. No. 493), but the third-party petition is silent with respect to this other order.

4

3, 2015, to January 1, 2016, and also sent direct notice of it to petitioner on December 3, 2015. Dkt. Nos. 517, 518.

### B. Procedural History

Petitioner, as the trustee of Banah's Chapter 7 bankruptcy estate, filed a third-party petition dated February 2, 2016, to recover the seized $2.7 million. Pet., Dkt. No. 522.[6] Through papers dated April 4, 2016, the government moved to dismiss the petition pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A). *See* United States' Memorandum of Law in Support of Motion to Dismiss Petition dated Apr. 4, 2016, Dkt. No. 539-1 ("Gov't Mem."). Petitioner filed opposition papers dated May 18, 2016. *See* Third Party's Response in Opposition dated May 18, 2016, Dkt. No. 556 ("Pet. Opp."). The government replied on June 27, 2016. United States' Memorandum of Law in Reply dated June 27, 2016, Dkt. No. 567 ("Gov't Reply").

## II. Discussion

### A. Statutory Framework

21 U.S.C. § 853 "establishes the procedures by which a third party may claim an interest in funds ordered forfeited to the United States." *United States v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015). Specifically, under § 853(n), a third party "asserting a legal interest in property which has been ordered forfeited to the United States . . . may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). The third-party petition must "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or

---

[6] Under 21 U.S.C. § 853(n)(2), a third party has only 30 days to file such a petition. Here, however, the Court so-ordered the parties' stipulation to enlarge the allotted time to February 3, 2016. Dkt. No. 516.

interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3).

"At the hearing, the petitioner must first establish his standing to challenge the forfeiture order by demonstrating a 'legal interest' in the forfeited property under § 853(n)(2)." *Watts*, 786 F.3d at 160. "The petitioner must then prove his entitlement to relief on the merits by establishing, through a preponderance of the evidence, one of two superior claims to the property under § 853(n)(6)." *Id.*[7] Specifically, under § 853(n)(6), the petitioner has the burden of establishing either that (A) his interest in the property "was vested in [him] rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property" or (B) he was a "bona fide purchaser for value of the right, title, or interest in the property." 21 U.S.C. § 853(n)(6)(A)–(B). "The determination of the relevant property interests, including the definition of a bona fide purchaser for value, are governed by state law." *United States v. Mendez*, No. 07-CR-107(ARR), 2009 WL 1706354, at *3 (E.D.N.Y. June 17, 2009). In this case, the parties agree that Florida law applies. Gov't Reply at 3; Pet. Opp. ¶¶ 44–45.

B.   **Legal Standard Applicable Motion to Dismiss**

Under Federal Rule of Criminal Procedure 32.2, "a motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *Pacheco*, 393 F.3d at 352. "To survive dismissal, a petition must set forth enough facts to 'state a claim to relief that is

---

[7] The Second Circuit has determined that the inquiry as to whether a petitioner has a "legal interest" to establish standing under § 853(n)(2) is identical to the inquiry on the merits under § 853(n)(6). *United States v. Church & Dwight Co.*, 510 F. App'x 55, 58 (2d Cir. 2013) (citing *United States v. Ribadeneira*, 105 F.3d 833, 835 (2d Cir. 1997); *DSI Assocs. LLC v. United States*, 496 F.3d 175, 187 n.9 (2d Cir. 2007)).

6

plausible on its face.'" *United States v. Madoff*, 826 F. Supp. 2d 699, 703 (S.D.N.Y. 2011) (quoting *Willis Mgmt., Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011)); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While the court must assume the facts set forth in the petition to be true for purposes of the motion, Fed. R. Crim. P. 32.2(c)(1)(A), the court is not required to accept any legal conclusions in the petition, *Willis Mgmt.*, 652 F.3d at 242." *Madoff*, 826 F. Supp. 2d at 703.

    C.    **Interests in Seized Funds under § 853(n)(6)(A)**

        1.    **Government's Interest Vested before Plaintiff's**

Petitioner argues that the bankruptcy estate's interest in the seized $2.7 million vested before the government's interest and that, as a result, the estate's interest is superior to that of the government under 21 U.S.C. § 853(n)(6)(A). Pet. Opp. ¶¶ 82–83. For a third party to establish a right to seized property derived from criminal activity under this statutory provision, the petitioner must establish that—"at the time of the commission of the acts which gave rise to the forfeiture of the property"—he had an "interest in the property . . . [that] was vested in [him] rather than the defendant or was superior to any . . . interest of the defendant." 21 U.S.C. § 853(n)(6)(A) (emphasis added); *see United States v. King*, No. 10-CR-122 (JGK), 2012 WL 2261117, at *6 (S.D.N.Y. June 18, 2012) ("'To make sense of § 853(n)(6)(A), it is necessary to read the temporal requirement—'at the time of the commission of the acts which gave rise to the forfeiture'—as applying to both 'vested in the petitioner rather than the defendant' and the alternative 'or was superior to any right, title, or interest of the defendant.'") (quoting *United States v. Hooper*, 229 F.3d 818, 821 (9th Cir. 2000)).

"Section 853(n)(6)(A) works hand in hand with the 'relation-back' doctrine embodied in § 853(c), which provides that all property subject to forfeiture based on a criminal offense 'vests

7

in the United States upon the commission of the [offense].'" *Watts*, 786 F.3d at 166 (quoting 21 U.S.C. § 853(c)) (alteration in original). "Because forfeitable property vests in the government immediately upon the commission of a criminal act, a third party may prevail under § 853(n)(6)(A) only by establishing that he 'had a legal interest in the forfeited property *before* the underlying crime was committed'—that is, 'before the government's interest vested.'" *Id.* (quoting *United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007)) (emphasis in original).

Here, the criminal activity occurred between January 2004 and December 2012, *supra* at 1–2, meaning that the government's interest in the $2.7 million that derived from this activity vested no later than December 2012. By petitioner's own account, the bankruptcy estate's interest in these funds did not vest any earlier than May 2014, when the bankruptcy court approved the reorganization plan and thereby bound Cana to proceed with the sale and effectively converted the $2.7 million into "an asset of the Bankruptcy Estate." Pet. ¶¶ 18, 26. Because the government's interest in these funds vested before the petitioner's, the Court concludes that the petition does not plausibly plead facts to establish a claim for relief under § 853(n)(6)(A). For this reason, the government's motion to dismiss is granted.

### 2.  Offense Property, Not Substitute Property

To avoid this result, petitioner contends that the seized $2.7 million did not derive from criminal activity and, thus, the government's interest in the funds did not vest at the time of the underlying crimes under 21 U.S.C. § 853(c). Petitioner's argument is premised on the notion that the seized funds are not "offense property" under § 853(a)(1) but rather "substitute property" under § 853(p). Pet. Opp. ¶¶ 68–77. "Forfeitable property is divided into two categories under 21 U.S.C. § 853: offense property and substitute property." *United States v. Peterson*, 820 F. Supp. 2d 576, 583 (S.D.N.Y. 2011) (citing 21 U.S.C. § 853(a)(1), (p)). "Government interests in

8

forfeitable property vest at different times, depending on the property's categorization." *Id.* at 584.

The government's interest in offense property—which is defined as "property constituting, or derived from, any proceeds the [criminal defendant] obtained, directly or indirectly" from illegal activity, 21 U.S.C. § 853(a)(1)—"vests retroactively to the date of the original criminal act." *Peterson*, 820 F. Supp. 2d at 584 (citing 21 U.S.C. § 853(c)). Unlike offense property, substitute property is not traceable to illegal activity. Instead, substitute property is "other property of the defendant" that the government may seize when, "as a result of any act or omission of the defendant," the offense property—

> (A) cannot be located upon the exercise of due diligence;
>
> (B) has been transferred or sold to, or deposited with, a third party;
>
> (C) has been placed beyond the jurisdiction of the court;
>
> (D) has been substantially diminished in value; or
>
> (E) has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1)–(2); *see also* Pet. Opp. ¶ 71 (quoting *United States v. Espada*, 128 F. Supp. 3d 555, 559 (E.D.N.Y. 2015)). In contrast to offense property, "the statutory provision regarding substitute assets does not explicitly provide for relation back." *Peterson*, 820 F. Supp. 2d at 584 (internal quotation marks omitted). District courts in the Second Circuit are divided as to when the government's interest in such property vests. *See United States v. Egan*, 654 F. App'x 520, 521 n.1 (2d Cir. 2016). One view, which petitioner embraces here, is that the government's interest arises when the Court enters the preliminary order of forfeiture. Pet. Opp. ¶ 67; *see, e.g., Espada*, 128 F. Supp. 3d at 566.

By petitioner's account, while bankruptcy estate's interest in the $2.7 million vested in May 2014 (when the bankruptcy court approved the reorganization plan) or at the latest in July 2014 (when the sale was scheduled to close and the reorganization plan was to become effective), the government's interest did not vest until June 2015 (when the Court issued the preliminary order of forfeiture). Pet. Opp. ¶¶ 67, 77. Consequently, petitioner argues that the bankruptcy estate's interests in the funds is superior to the government's. *Id.* ¶¶ 82–83.

This argument is premised on the assumption that the seized funds are substitute assets. Yet the third-party petition is devoid of non-conclusory facts to support this notion. Further, as petitioner acknowledges, the United States represented to Judge Reyes that these funds "derived from criminal activity," which would make them, by definition, offense property under 21 U.S.C. § 853(a)(1). *See* Pet. ¶ 28. Judge Reyes issued a warrant to seize the funds after concluding that probable cause existed to believe that they were linked to drug and money-laundering activities. Pet. Ex. 3 (Seizure Warrant dated Aug. 5, 2014).[8] Indeed, there are no allegations that the government ever made, or attempted to make, a showing that the seizure of an untainted $2.7 million was necessary due to difficulty located tainted funds. *See* 21 U.S.C. § 853(p); *United States v. Rosario*, 111 F.3d 124 (2d Cir. 1997) ("The purpose of § 853(p) is to substitute non-tainted assets for tainted assets that are not able to be located for forfeiture."); *United States v. Christie*, No. 08-CR-1244, 2017 WL 1293570, at *2 (S.D.N.Y. Apr. 7, 2017) ("The court must order the forfeiture of substitute assets to satisfy a money judgment where . . .

---

[8] It is at least questionable whether any pre-trial seizure of substitute (as opposed to offense) property would have been lawful. *See, e.g., United States v. Fisher*, 225 F. Supp. 3d 151, 172 (W.D.N.Y. 2016) ("In contrast to directly forfeitable property and its traceable proceeds, the Government 'may not obtain a pre-trial restraint on potential substitute property.") (quoting *United States v. Queri*, 679 F.Supp.2d 295, 296 (N.D.N.Y. 2010)); *United States v. Perkins*, 994 F. Supp. 2d 272, 275 (E.D.N.Y. 2014) ("[P]re-conviction restraint of substitute assets is impermissible.").

the Government is unable to locate or obtain the specific proceeds of the defendant's offenses."). Finally, although the preliminary order of forfeiture does not say so expressly, the Court entered the order on the rationale that the funds derived from criminal activity. *See* Dkt. No. 487.

Without alleging any non-conclusory facts to show otherwise, petitioner questions whether the seized funds truly derived from criminal activity. *See* Pet. ¶¶ 24, 33, 53. "Vital as [this line of argument] may be to Petitioner's claim for relief, [he] lacks standing to bring" it. *United States v. Daugerdas*, No. 09-CR-581 (WHP), 2017 WL 1052592, at *2 (S.D.N.Y. Mar. 20, 2017) (third-party petitioner lacked standing to challenge district court's determination that seized funds in investment accounts constituted offense property). After all, a § 853(n) ancillary proceeding "'does not involve relitigation of the forfeitability of the property.'" *DSI Assocs.*, 496 F.3d at 185 (quoting Fed. R. Crim. P. 32.2 Advisory Committee Note); Gov't Mem. at 18 n.7. Thus, the argument that the seized $2.7 million lacks a sufficient nexus to criminal activity is "not [petitioner's] to make." *Daugerdas*, 2017 WL 1052592, at *3 (internal quotation marks omitted).

Petitioner's reliance on *United States v. Espada* is misplaced. In that case, the property interests at issue—namely, a spouse's right to collect future pension payments—were substitute property by the government's own admission. Indeed, the government had moved to forfeit the benefits on the rationale that it had been unable to "'to locate, obtain or collect the criminal proceeds of the defendant's offenses.'" *Espada*, 128 F. Supp. 3d at 558. Given that there was no dispute as to whether the assets were substitute property, *Espada* does not help petitioner establish his entitlement to the seized funds here.

Although the seizure of the $2.7 million may have been detrimental to the bankruptcy estate, "'Congress did not intend section 853(n) to serve as a vehicle by which all innocent third

11

parties who are aggrieved by an order of criminal forfeiture can petition for judicial relief.'" *DSI Assocs.*, 496 F.3d at 186 (quoting *United States v. Lavin*, 942 F.2d 177, 185 (3rd Cir.1991)) (emphasis omitted). Rather, "'in enacting section 853(n)(6)(A) and (B), intended to accord standing to only two narrow classes of third parties, and intended to require all other third parties to petition the Attorney General for relief.'" *Id.*; *see* 21 U.S.C. § 853(i); 28 C.F.R. Part 9. Unfortunately for petitioner, he does not fit into either narrow class. First, as explained above, petitioner has not alleged facts to sufficient to establish a superior interest in the funds under § 853(n)(6)(A). Second, petitioner has not claimed to be a "bona fide purchaser for value" § 853(n)(6)(B)—much less pleaded facts to state a plausible claim on that theory. For these reasons, the third-party petition must be dismissed.[9]

---

[9] In light of the above, the Court does not decide the other grounds for dismissal raised by the government. The Court does note, however, that other weaknesses in the petition arguably constitute independent reasons for dismissal. For example, a key premise underlying petitioner's position is that the sale of Banah was "was effectively completed and consummated" when the bankruptcy court approved the plan of reorganization in May 2014—such that Banah became entitled to the $2.7 million no later than July 30, 2014, the revised closing date. Pet. ¶ 26. Petitioner ignores the $800,000 cash shortfall which Banah believed to be necessary for the sale to close. *See supra* at 2–3. Consequently, it is not clear that the sale was ever "completed and consummated" so as to make the $2.7 million Banah's assets. Pet. ¶ 26. Petitioner also does not meaningfully address the fact that, at the time of the seizure, the $2.7 million was in an attorney "trust account." *Id.* To the extent that the funds were in escrow, it would appear that Banah never became entitled to them given that the transaction ultimately fell through. *See* Gov't Reply at 3–4; *Mendez*, 2009 WL 1706354, at *3 ("Under Florida law, legal title to property placed in escrow remains with the grantor until the occurrence of the condition specified in the escrow agreement.") (internal quotation marks omitted). Finally, according to petitioner, a court-approved plan of reorganization binds parties with contractual-like obligations such that Banah was contractually entitled to the $2.7 million given the bankruptcy court's approval of the plan. Pet. Opp. ¶¶ 39–40, 44–49. Yet petitioner cites no authority for the proposition that these obligations continue even after the order approving such a plan is vacated. *See* Gov't Reply at 4.

## III. Conclusion

For these reasons, the government's motion to dismiss (Dkt. No. 539) is granted. Petitioner's motion for oral argument (Dkt. No. 568) is denied as moot.

**SO ORDERED.**

                                                      s/SLT

                                        SANDRA L. TOWNES
                                        United States District Judge

Dated: Brooklyn, New York
       August 29, 2017